UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In the Matter of the Search of information associated with the e-mail address mayiurena24@gmail.com that is stored at premises controlled by Google LLC | Case No. 19-mj-27-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Matheus Figueira, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google LLC, an e-mail service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google LLC to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the United States Drug Enforcement Administration ("DEA") and have been so employed since 2016. I am currently assigned to the Bedford, New Hampshire Resident Office. I was employed by the United States Capital Police as a police officer from 2012 through 2016. My duties and responsibilities include the investigation of federal crimes, including violations of 21 U.S.C. § 841(a)(l) and 21 U.S.C. § 846. I have

debriefed defendants, confidential sources, and witnesses who had personal knowledge regarding narcotics trafficking organizations. In addition, I have discussed the methods and practices used by narcotics traffickers with numerous law enforcement officers and confidential sources. I have also participated in many aspects of drug investigations, including but not limited to, undercover or confidential source buy operations, telephone toll analysis, records research, physical and electronic surveillance activities, and wiretap investigations. In connection with these investigations, and based on my training and personal experience, I have also become familiar with internet-based e-mail services and their significance in narcotics investigations.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed by Mayerlin URENA and other persons known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND CONCERNING E-MAIL

6.     In my training and experience, I have learned that Google LLC provides a variety of online services, including an e-mail service called Gmail, to the public. Google LLC allows

subscribers to obtain e-mail accounts at the domain name "@gmail.com" like the e-mail account

listed in Attachment A. Subscribers obtain an account by registering with Google LLC. During

the registration process, Google LLC asks subscribers to provide basic personal information.

Therefore, the computers of Google LLC are likely to contain stored electronic communications

(including retrieved and unretrieved e-mail for Google LLC subscribers) and information

concerning subscribers and their use of Google LLC services, such as account access

information, e-mail transaction information, and account application information.

7.       In my training and experience, e-mail providers typically retain certain

transactional information about the creation and use of each account on their systems. This

information can include the date on which the account was created, the length of service, records

of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account

(including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage

of the account. In addition, e-mail providers often have records of the Internet Protocol address

("IP address") used to register the account and the IP addresses associated with particular logins

to the account. Because every device that connects to the Internet must use an IP address, IP

address information can help to identify which computers or other devices were used to access

the e-mail account.

8.       In general, an e-mail that is sent to a Gmail subscriber is stored in the subscriber's

"mailbox" on Google LLC servers until the subscriber deletes the e-mail. If the subscriber does

not delete the message, the message can remain on Google LLC servers indefinitely. Even if the

subscriber deletes the e-mail, it may continue to be available on Google LLC's servers for a

certain period of time. The same is true for e-mails sent by a Gmail subscriber, which are stored in a "Sent" folder associated with the subscriber's account.

## **PROBABLE CAUSE**

9.      In the early stages of this investigation, a cooperating source ("CS-1")[1]  informed DEA agents that CS-1 was able to purchase heroin and/or fentanyl[2] and cocaine base ("crack") from a drug trafficking organization ("DTO") run by persons known to CS-1 as Ronnie and Janet. CS-1 explained that CS-1 would contact the DTO by phone call or text message to place an order and would then be given a payment amount and directed to a specific location in or near Lawrence, Massachusetts where CS-1 would meet with a delivery person (a "runner") in a vehicle (either CS-1's or the runner's) to exchange money for drugs. CS-1 also stated that for larger purchases, CS-1 could be directed to an apartment, rather than a vehicle, to conduct the transaction. CS-1 stated that in these apartments, CS-1 had observed gallon-size plastic bags full

---

[1] CS-1 began cooperating with the Nashua, New Hampshire Police Department in December 2017 in mitigation of pending charges for sale of a controlled drug. In May of 2018, CS-1 was arrested for possession of cocaine and criminal trespass. Nonetheless, the assistance provided by CS-1 in December 2017 and January 2018 was reliable, in that it was directly witnessed by law enforcement officers and corroborated by other independent evidence, such as toll records.

[2] Fentanyl is a synthetic opioid formulated to approximate the effects of heroin at a higher potency level. Heroin can be "cut" with filler substances and then mixed with a smaller amount of fentanyl to create more salable units from a given amount of pure heroin, thereby increasing profitability. Fentanyl can also be sold and used on its own. Drug traffickers often market heroin/fentanyl mixtures or even pure fentanyl as simply "heroin" or one of several slang terms for heroin, such as "down," because certain opioid consumers prefer heroin to fentanyl. Other opioid consumers may seek out fentanyl for its higher potency. Agents have also encountered "fentanyl analogs," which are synthetic substances chemically similar to fentanyl but with even higher potency. Thus, in drug investigations such as this one, it can be difficult to identify exactly what opioid substances are being distributed until drugs are seized and subjected to laboratory testing. Heroin is a Schedule I controlled substance and fentanyl is a Schedule II controlled substance. The opioid substance being distributed by the DTO in this investigation is referred to herein as heroin/fentanyl.

of drugs and small cement mixers, which can be used to mix drugs with cutting agents. CS-1 explained that the DTO often changed the "customer phone" number used to receive orders, so CS-1 would regularly receive a communication from a new number, indicating that the new number was the new customer phone.

10.     On January 30, 2018, CS-1 contacted the then-active customer phone number of ███████████ to inform the DTO that a friend of CS-1 (the friend actually being an undercover officer) would be contacting them as a referral, to which the DTO replied saying that would be acceptable. On the same date, the undercover officer ("UC-1") contacted the DTO via a voice call where a female voice answered that identified herself as "Janet," and UC-1 ordered three fingers (referring to 30 grams) of heroin/fentanyl. UC-1 later completed a controlled purchase of the 30 grams of heroin/fentanyl in Lawrence.

11.     On February 9, 2018, UC-1 contacted the DTO at the customer phone number of ███████████ for the purpose of conducting a controlled purchase of 40 grams of heroin/fentanyl. UC-1 had another voice call with a female that identified herself as "Janet" and was directed to a location in Lawrence before being re-directed to a second location in Lawrence. At the second location, UC-1 met with a runner and completed the drug transaction inside of a vehicle registered to URENA. At the time of this purchase, agents were receiving real-time geolocation information for the phone bearing ███████████, which indicated that the phone was at a Best Western Hotel in Haverhill, Massachusetts. Agents obtained a guest list for the hotel from that date showing that a room was rented to URENA. There is therefore probable cause to believe that URENA was the user of the then-active customer phone and manages the DTO under the alias "Janet."

12. Since February 2018, numerous other cooperating sources have independently come forward with information pertaining to the same DTO. The indicia of the cooperating sources having a common supplier include: (1) communication with a woman calling herself "Janet"; (2) purchases in the Essex Street area of Lawrence; (3) instructions to leave money in the center console of the buyer's vehicle and take a short walk; and (4) communication with common phone numbers. Controlled purchases of heroin/fentanyl from the DTO have continued into January 2019.

13. URENA is a citizen of the Dominican Republic and has lawful permanent resident ("LPR") status in the United States. In connection with her application for, and maintenance of, LPR status, URENA has submitted numerous documents to the Department of Homeland Security. Agents of the Department of Homeland Security have informed me that URENA consistently uses the e-mail address of mayiurena24@gmail.com for her travel reservations to and from the Dominican Republic.

14. There is therefore probable cause to believe that evidence of the DTO's activity, constituting violations of 21 U.S.C. §§ 841 and 846, will be found in the data maintained by Google LLC associated with URENA's e-mail account. For example, the following information can reasonably be expected to be found in URENA's sent and received e-mail: (1) messages to/from a provider of cellular telephone services identifying telephone numbers subscribed to URENA that she uses to conduct DTO business; (2) receipts or other messages containing physical addresses associated with URENA that she uses as residences, drug storage locations, or other types of premises relevant to the DTO's activities; (3) messages to/from financial institutions and money service businesses identifying accounts used to store and launder proceeds of drug sales; (4) messages to/from co-conspirators, such as suppliers, runners, and sub-

distributors, whether or not the content of those messages is itself evidence of drug distribution; and (5) messages to/from transportation service providers, such as airlines and ridesharing services, indicating URENA's recent or future travel to locations of relevance to the DTO.

## **CONCLUSION**

15.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google LLC, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time of day or night.

## **REQUEST FOR SEALING**

16.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.


/s/ Matheus Figueira
_____
Matheus Figueira
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on February 12, 2019



   /s/ Andrea K. Johnstone
_____
HON. ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the e-mail address

mayiurena24@gmail.com that is stored at premises owned, maintained, controlled, or operated

by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View,

California.

## ATTACHMENT B

**Particular Things to be Seized**

I.     **Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any e-mails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all e-mails associated with the account from December 1, 2017 to February 12, 2019, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number); and

c.     The types of service utilized.

The Provider is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846, those violations involving Mayerlin URENA and occurring after December 1, 2017, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The distribution of illegal drugs and laundering of drug proceeds;

(b) Evidence indicating how and when the e-mail account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the e-mail account owner;

(c) Evidence indicating the e-mail account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user of the account about matters relating to the distribution of illegal drugs and laundering of drug proceeds, including records that help reveal their whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google LLC, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google LLC. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google LLC, and they were made by Google LLC as a regular practice; and

b.      such records were generated by Google LLC's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google LLC in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Google LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____          _____
Date                                                      Signature